UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STANLEY PACE,

        Plaintiff,

   v.

JORAN LUNDH,

        Defendant.

CASE NO. C18-5965RBL

ORDER

THIS MATTER is before the Court on Plaintiff Pace's Motions for a Default Judgment, awarding to him the rights to the domain name <lascal.com>. Defendant Lundh (a Hong Kong resident using the domain name) commenced an ICANN administrative proceeding under its Uniform Dispute Resolution Policy (UDRP) to determine ownership of the domain name. Pace claims that he properly registered the name here (which he claims is both a common last name and an expression referring to a new Las Vegas - California road and train system). The World Intellectual Property Organization (WIPO) "locked" the domain name and then rendered a decision requiring Pace to transfer it to Lundh.

Pace sued here to obtain a declaratory judgment that his use of the domain name did not violate Lundh's trademark rights under the Anticybersquatting Consumer Protection Act

(ACPA), 15 U.S.C. § 1125(d), or the Lanham Act of which the ACPA is a part. He claims that Lundh is engaged in "reverse domain name hijacking," seeking to wrest control of Pace's <lascal.com> domain name by asserting spurious and baseless allegations of trademark infringement. Pace claims that he has not sought to sell the name, but does allege that Lundh repeatedly approached him under false pretenses to attempt to induce him (Pace) into a purchase contract for the name. Pace concedes that he has "thousands" of domain names for sale.

This Court reluctantly permitted Pace to serve Lundh by email and Federal Express, under Fed. R. Civ. P. 4(f)(2)(C)(ii) and Rule 4(f)(3). [Dkt. # 8] He did not appear or defend. The Clerk entered Default in October. Pace now seeks a Default Judgment establishing as a matter of law that he did not violate Lundh's rights under the ACPA, that Lundh is not entitled to transfer of the domain name, and that the domain name belongs to Pace.

Entry of default judgment is left to the Court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). Because granting or denying relief is within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a Court-ordered judgment. *Id*. at 1092. In exercising its discretion, the Court considers seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986). *See Getty Images (US), Inc. v Virtual Clinics*, 2014 WL 358412 (W.D. Wash. January 31, 2014).

Only the first factor supports the entry of a default judgment here. It may be true that Lundh received actual notice of these claims and through neglect or indifference declined to defend the WIPO decision in his favor, and that absent a default judgment, Pace will not be able to overturn the WIPO decision and use or sell the <lascal.com> domain name (one of "thousands" he has stockpiled for sale). But the mere fact that denying a default judgment motion deprives plaintiff of a quick, favorable outcome she might not obtain by litigating the case on the merits is not sufficient prejudice" to warrant entry of a default judgment. *Collin v. Zeff*, No. CV 12–8156 PSG (AJW), 2013 WL 3273413.

The remaining factors persuade the Court to decline to enter the requested default judgment. Even accepting Pace's purely factual allegations as true, his claim does not appear to have substantive merit. He concedes that Lundh was and is using the <lascal.com> domain name, and that he purchased it for speculative use, claiming (1) it is a common name, and (2) that it refers to some unpublicized proposed new road and rail system between Las Vegas and California—but there is no evidence whatsoever supporting either claim. Pace admits he discussed selling the name to Lundh (even if Lundh approached him first). It seems at least as likely as not that Pace seeks to do what he admits does with his other names: sell it to someone who is using the name without a trademark.

Third, at several key junctures, Pace's Complaint contains more legal conclusions than factual allegations:

16. The reasons stated in the ruling of the arbitrator represent a significant departure from the written standards contained in the UDRP in that Defendant did not prove (1) that Plaintiff did not have bona fide rights in the Domain Name or in terms included in the Domain Name (for purposes of the federal trademark laws that are applicable to the proceeding), (2) that Plaintiff had no legitimate interest in the domain, or (3) that Plaintiff had registered and/or used the Domain Name in bad faith.

17. Plaintiff's use of the term as a domain name has not traded upon any goodwill or reputation enjoyed by Defendant as it relates to the products or services that Defendant offers, nor is there any possibility of confusion between Plaintiff's web site and the products offered by Defendant to the general public.

18. Plaintiff's use of LASCAL.COM as his chosen domain name is a fair or otherwise lawful use of the term pursuant to his business plan to acquire generic or descriptive domain names.

19. At no time did Plaintiff trade upon or use Defendant's alleged trademark for his business of monetizing domain names.

20. At no time did the Plaintiff register or use the domain name LASCAL.COM in "bad faith" as defined by 15 U.S.C. § 1125.

[Dkt. # 1 at 4-5]. The context of the case suggests serious questions as to the veracity of these legal conclusions, under both the ICANN UDRP and the ACPA.

And while Pace seeks no monetary relief (and makes no claim about how much the name is worth, even to Lundh) (*Eitel* factor 4), there are ample indications of disputed material facts (*Eitel* factor 5). The Court cannot know whether Lundh's default was due to excusable neglect (*Eitel* factor 6); it approved alternate foreign service to an email and physical address for Lundh provided by Pace. It is puzzling that Lundh would initiate the WIPO process, win, and then decline to defend his right to the domain name he apparently was using.

The final factor is the obvious preference for a resolution on the merits, where reasonably possible (*Eitel* factor 7). Judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle,* 615 F.3d 1085, 1089 (9th Cir. 2010) (citing *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)); *see also Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006); *Speiser, Krause & Madole P.C. v. Ortiz*, 271 F.3d 884, 890 (9th Cir. 2001); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695–96 (9th Cir. 2001).

The Motion for Default Judgment is DENIED.

IT IS SO ORDERED.

Dated this 4th day of March, 2020.

Ronald B. Leighton
United States District Judge